[No. 22927. Department Two. May 11, 1931.]

B. A. KLIKS, *Respondent*, v. TENET MORTGAGE COMPANY *et al., Appellants.*[1]

*G. E. Hamaker,* for appellants.

*McMaster, Hall & Schaefer,* for respondent.

FULLERTON, J.—Preliminarily, the respondent moves to strike the statement of facts. The statement was filed and served within the time prescribed by Rule VII, adopted by this court January 14, 1927. 140 Wash. p. xxxix (Rem. 1927 Sup., § 308-7). There was served with the statement a notice that on the fifth day thereafter the appellants would present the statement to the trial judge for settlement and certification. On the day so indicated, the respondent not being present or represented, the statement was presented to the judge and was certified.

Section 389, Rem. Comp. Stat., after providing for the filing and service of a proposed statement of facts, reads as follows:

"Within ten days after such service any other party may file and serve on the proposing party, any amendments which he may propose to the bill or statement. Either party may then serve upon the other a written notice that he will apply to the judge of the court before whom the cause is pending or was tried, at a time and place specified, the time to be not less than three nor more than ten days after service of the notice, to settle and certify the bill or statement; and at such time and place, or at any other time or place specified

in an adjournment made by order or stipulation, the judge shall settle and certify the bill or statement. . . . If no amendment shall be served within the time aforesaid, the proposed bill or statement shall be deemed agreed to and shall be certified by the judge at the instance of either party, at any time, without notice to any other party on proof being filed of its service, and that no amendments have been proposed; . . . ''

The respondent offered no amendment to the statement as proposed by the appellants, nor did he move against the premature certification, which, by the express terms of Rule VII, *supra,* was a mere irregularity not affecting the jurisdiction. It seems plain that the irregularity was harmless. The premature certification was no obstacle to the proposal of any amendments which the respondent might have desired to suggest. Had amendments been proposed, the premature certification would have become a nullity, and a new settlement and certification would have had to be made after the giving of the prescribed notice. But, after the time had elapsed for the proposal of amendments and none had been proposed, the premature settlement and certification became valid, for it would have been an idle thing to cancel the certificate and immediately make another to the same effect.

*Taylor v. Osborn,* 1 Wash. 189, 23 Pac. 858, and *Erickson v. Erickson,* 11 Wash. 76, 39 Pac. 241, are cited by the respondent in support of his motion, but we find that neither case is in point. In the former, the appeal was taken under the act of November 23, 1883 (Laws of 1883, p. 59), which prescribed, in § 3, a procedure for the settlement of statements of facts entirely different from that prevailing now. According to that procedure, a notice of at least ten days, given by the party desiring to have a statement of facts settled to the opposite party, was the first step toward

the settlement of the statement, and was the process, so to speak, and the only process, whereby the matter of the settlement of a statement of facts could be brought before the court. The notice given in that case was that on the second day after the service of it application would be made to the court to settle a statement, and the application was made accordingly, and the statement was settled and certified in the absence of the opposing party.

In the latter case, a prescribed jurisdictional step— the service of the proposed statement of facts upon the opposite party after the filing of the statement—had been omitted, and the period within which amendments might have been proposed had not even commenced to run.

The motion to strike the statement of facts is denied.

The defendant Glascock, on June 8, 1926, mortgaged to the respondent, by a single instrument, two contiguous tracts of land in Clark county, the two parts being designated tract 1 and tract 2 for convenience. The mortgage also covered certain personalty, which we shall refer to later. There was a commercial prune orchard on the land, occupying a portion of each tract. On tract 2 was a prune dryer, consisting of a building with the usual machinery and equipment.

When the mortgage to the respondent was executed, tract 1 was subject to a prior mortgage to the appellant Ashley, and tract 2 was subject to a prior mortgage to one Goodwin and others. The latter mortgage was assigned to the respondent on June 26, 1928. At this time, the Ashley mortgage was long overdue, and such defaults had occurred under the other two mortgages that the respondent was entitled to commence foreclosure of either or both of them.

Ashley had been pressing Glascock, the mortgagor, for settlement of the mortgage debt and other indebted-

ness owed by him to the Niadi Company and the Ashley State Bank, which were corporations managed and controlled by Ashley. On June 16, 1928, Glascock, at Ashley's instance, conveyed all of the mortgaged property, including the personalty, to the appellant Tenet Mortgage Co., which was another corporation of Ashley's, called by him "the holding company." The exact purpose of this conveyance is one of the matters in dispute, and will be referred to later.

The respondent also was pressing Glascock for a settlement, and had insisted that Glascock convey the mortgaged property to the respondent's daughter in satisfaction of the two mortgages held by him. About July 10, 1928, Glascock and Ashley conferred with the respondent at the latter's office at McMinnville, Oregon, and at this conference an oral understanding was reached, looking to the avoidance of foreclosures by arranging for the conveyance of tract 1 to Ashley and of tract 2 to the respondent's daughter, and for the release of tract 1 from the respondent's mortgage of June 8, 1926, but allowing Glascock a year in which to sell the property, if thereby he could realize enough to meet the indebtedness against it, or such a sum as would be acceptable to all of the parties.

Just how this arrangement was to be carried out is not made clear. It appeared later that the respondent and Ashley differed as to the method intended, though probably not in matters that would have been material had the parties ever come to the point of actually executing the requisite documents. The respondent, who is an attorney at law, was to draft the documents and submit them to the others. This the respondent never did, although repeatedly during the ensuing year he was urged by both Ashley and Glascock to do so, and at one time, at least, Ashley himself offered to have the papers prepared if the respondent would lend him

the abstracts from which to obtain the descriptions, which the respondent did not do.

At some time during the summer or fall of 1928, there was an agreement concerning the application of rents and profits of the mortgaged property, whereby the income from tract 1 was to go to Ashley, and the income from tract 2 to the respondent. The latter contended at the trial that this agreement about rents and profits was a part of the understanding reached at the conference of July 10, but both Glascock and Ashley denied this, and the trial judge, both in his memorandum opinion and in the formal findings, found that only Glascock was a party to the agreement with the respondent concerning the rents and profits.

The mortgaged land was tenantless, and apparently wholly unoccupied, during the summer and early fall of 1928, and no rents or profits were expected or were received that season. It was a matter of concern to all of the parties, however, that a tenant for the land be secured, so that the orchard might be properly cared for and cultivated; and both the respondent and Glascock made repeated efforts to find a tenant. Finally, in October, 1928, Glascock secured the defendant Watzig as a tenant, on shares, for a period of three years. In writing to the respondent on October 29, 1928, to inform him of this lease, Glascock closed his letter thus: "You understand that all of the income from the places will be turned to you and Mr. Ashley."

In the season of 1929, the land yielded some profit, the net amount accruing as the landlord's share of the prune crop produced on tract 2 and from the operation of the dryer being $476.60, as established at the trial. The landlord's share of the entire profits, including the sum just mentioned, was received and retained by the appellant Ashley.

The date of the commencement of this action does

not appear but it was after the accrual of profits in the fall of 1929. The amended complaint, filed April 9, 1930, set up two causes of action. The first was based upon an alleged agreement of all the parties to this action, to the effect (so far as need now be noticed) that the rents and profits from all of the land were to be paid in equal shares to the respondent and the Tenet Mortgage Co., and upon the allegation that Ashley and the Tenet Mortgage Co. had taken the entire profits in violation of that agreement. The second cause of action was for the foreclosure of the $1,500 mortgage of June 8, 1926, to the respondent, which, it will be remembered, covered all of the land, but was junior to Ashley's mortgage on tract 1 and junior to the Goodwin mortgage (later acquired by the respondent) on tract 2.

The answer of the Tenet Mortgage Co. put in issue the material allegations of the amended complaint; and the answer of Ashley did likewise, and also sought, by cross-complaint, the foreclosure of the mortgage held by him on tract 1. The reply to the cross-complaint raised no issues that are now material. The trial resulted in a decree foreclosing both mortgages, and giving the respondent a personal judgment against Glascock, Ashley, and the Tenet Mortgage Co., for $476.60, the net profits derived from tract 2 during the season of 1929. Ashley and the Tenet Mortgage Co. have appealed.

All of the assignments of error are directed to two main questions: (1) Was the respondent entitled to a personal judgment against the appellants for the $476.60? and (2) Was it error to foreclose the respondent's mortgage upon the prune drying machinery and equipment?

The first question must be answered in the negative. Nothing closely approaching the agreement

alleged by the respondent in his first cause of action was proved at the trial, but only the situation we have outlined above. The appellants were not parties to Glascock's promise to turn over to the respondent the rents and profits of tract 2. The trial court refused to find that they were. The formal finding of fact on this question confines the agreement to Glascock and the respondent. In his memorandum opinion the trial judge said:

"In so far as the defendants are concerned, only Mr. Glascock can be considered in this question as to whether or not the contract was entered into concerning the division of the prune crop and the charge for the use of the dryer on the place that plaintiff had a first mortgage upon. . . . There is no question in my mind but that the plaintiff and defendant Glascock had a clear understanding that the division should be as mentioned by plaintiff in his testimony, and it is certainly the right thing to enforce that contract if under the law it can be enforced. For these reasons the court will decide that part of the controversy in favor of the plaintiff."

The judgment against the appellants evidently was based upon the following finding of fact:

"That during the season of 1929 there was produced on the premises mortgaged to the plaintiff and not covered by the mortgage of the defendant, Ashley, a crop of prunes of the net value of $476.60 after deducting the tenant's share of the same and the cost of drying, and that on or about the 1st day of October, 1929, the defendants, Tenet Mortgage Co. and M. A. M. Ashley, with the consent and aid of the defendant, W. V. Glascock, and in violation of the agreement made between the plaintiff and the defendant, W. V. Glascock, and with full knowledge of the claim of the plaintiff thereto, took and appropriated the said prunes and converted the same to their own use."

This finding was excepted to by the appellants for want of evidence to support it; and, after careful ex-

amination of all of the evidence, we are convinced that the exception is well taken, in so far as the finding implies that there was an actionable, wrongful interference by the appellants with the performance of Glascock's agreement to pay rents or profits to the respondent. All that appears in the evidence on that point, unless by mere innuendo, is to the effect that the tenant Watzig delivered the whole of the landlord's share of the crop to a marketing association, presumably at Glascock's direction, and that the net proceeds were paid by the association to Ashley. This does not prove a wrongful interference by the appellants, but at most a breach by Glascock of his promise to the respondent.

And it is none too clear, from a consideration of all of the evidence, that Glascock was guilty of any breach of contract. When he promised the respondent in the summer or fall of 1928 that rents from tract 2 would be turned over to him, it was expected by all of the parties that, long before any rents would accrue, their understanding of July 10 would have been consummated by the execution of appropriate documents; and if that had been done (and it was clearly the respondent's fault that it was not done), and if no sale had been made by July 15, 1929, the respondent would have become the owner of tract 1, and as such would have received the rents. Viewed in this light, it is not at all clear that Glascock was not justified in refusing to carry out his agreement, and in applying the rents to another of his obligations.

The nature of the conveyance by Glascock to the appellant Tenet Mortgage Co. is material to be considered here as well as in connection with the point next to be discussed. The conveyance was not simply a mortgage, as the trial court found. The only evidence touch-

ing the purpose of it is found in the testimony of Glascock and Ashley, from which it appears that it was originally intended that the Tenet Mortgage Co. should sell the land, and pay the first mortgage indebtedness to Ashley, and then Glascock's indebtedness to the Niadi Company, and then his indebtedness to the Ashley State Bank, and that Glascock was to look after the property and assist in selling it for the benefit of those creditors. The operation of this deed, of course, would have been terminated, or at least materially modified, if the understanding of July 10, 1928, had been carried out; but, since that understanding failed of consummation through the fault of the respondent and no apparent fault of the appellants or Glascock, the effect of the deed to the Tenet Mortgage Co. remained as at first intended, and the rents from all of the property rightfully belonged to it as trustee.

The second main question on this appeal, namely, Was it error to foreclose the respondent's mortgage on the prune drying machinery and equipment? must also be resolved against the respondent. This machinery and equipment was treated throughout the action as personalty, and it is described as such in the decree, and is ordered to be separately sold before the sale of the realty. The respondent's mortgage was not accompanied by the affidavit of good faith required for chattel mortgages by Rem. Comp. Stat., § 3780, nor was it ever filed or recorded as a chattel mortgage. Under the statute just cited, a mortgage of personalty, not supported by the required affidavit or not filed or recorded, is

" . . . void as against all creditors of the mortgagor, both existing and subsequent, whether or not they have or claim a lien upon such property, . . ."

The appellant Tenet Mortgage Co. represents in this action three creditors of the mortgagor, the appellant

Ashley, the Niadi Company, and the Ashley State Bank. Ashley was a secured creditor at the time the mortgage on the chattels was made, though not by any lien upon those chattels; the other two creditors were unsecured at that time, so far as the evidence discloses, but later became secured by Glascock's conveyance to the Tenet Mortgage Co. of both the land and the chattels included in the respondent's mortgage. Hence, the appellant Tenet Mortgage Co. was in a position, and had the right, and was charged with the duty, to resist the foreclosure of the respondent's mortgage on the chattels, at least on behalf of the Niadi Company and the bank. An issue as to the validity of the respondent's mortgage upon the chattels as against the creditors of Glascock represented by the Tenet Mortgage Co. was sufficiently raised by the latter's answer to the amended complaint, and it was error to include the chattels in the foreclosure decree.

The judgment appealed from is reversed and remanded, with a direction to modify the decree so as to correct the errors above indicated, and for such further proceedings as may be necessary to enforce the decree in a way not inconsistent with this opinion.

TOLMAN, C. J., BEALS, MILLARD, and BEELER, JJ., concur.